**Jennifer HOLBOURN, Plaintiff,**

v.

**NCL (BAHAMAS) LTD., a Bermuda Company, Defendant.**

**Case No. 14–21887–CIV.**

United States District Court, S.D. Florida.

Signed Sept. 26, 2014.

objecting party's response to a motion to compel are deemed abandoned.").

Bjorg Eikeland, John Heyward Hickey, Hickey Law Firm PA, Miami, FL, for Plaintiff.

Amanda Jean Sharkey Ross, Darren Wayne Friedman, Jeffrey Eric Foreman, Foreman Friedman, PA, Miami, FL, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR PROTECTIVE ORDER

ALICIA M. OTAZO–REYES, United States Magistrate Judge.

THIS CAUSE came before the Court upon Defendant NCL (BAHAMAS) LTD.'s ("NCL" or "Defendant") Motion for Protective Order Regarding Production of CCTV Video (hereafter "Motion for Protective Order") [D.E. 23], This matter was referred to the undersigned pursuant to 28 U.S.C. § 636 by the Honorable Ursula Ungaro, United States District Judge [D.E. 24], The undersigned held a hearing on this matter on September 10, 2014. For the reasons stated below, the undersigned denies the Motion for Protective Order.

### FACTUAL BACKGROUND

Plaintiff Jennifer Holbourn ("Holbourn" or "Plaintiff") brings this action against NCL as a result of injuries she alleges to have sustained while a passenger aboard NCL's cruise ship *Norwegian Breakaway.* In her hand-written statement given shortly after the incident, Holbourn states: "Walking on deck 16; sun lounger blew across deck striking my legs and knocking me down onto my right hip/shoulder." *See* Passenger Statement Form [D.E. 28–2], In her Complaint, Holbourn further alleges that on the day of the incident "the weather had been cloudy, rainy, and windy all day. Yet, the crew of the ship left the lounge chairs in their open positions and placed on the deck so that they were on the open part of the deck subject to the high winds." *See* Complaint [D.E. 1 at ¶ 11].

NCL captured the incident described by Holbourn on three different closed-circuit television cameras (hereafter, "Videos"). NCL claims that the Videos, which are covered by Holbourn's requests for production, are protected by the work product privilege. Notwithstanding its privilege claim, NCL is willing to produce the Videos after Holbourn's deposition. NCL objects to production of the Videos prior to Holbourn's deposi-

tion on the grounds that such production "will severely prejudice the Defendant's ability to obtain the Plaintiff [sic] unrefreshed recollection of events. If the Plaintiff is allowed to view the video footage the Plaintiff will be able to tailor her recollection of events and testimony to what is depicted on the video." See Defendant's Motion for Protective Order [D.E. 23 at ¶ 3]. Thus, the two issues presented in the Motion for Protective Order are: (1) whether the Videos are protected by the work product privilege; and (2) whether NCL should be required to produce the Videos prior to Holbourn's deposition. As more fully discussed below, the undersigned finds that the Videos are not protected by the work product privilege, and that NCL has not carried the burden to justify delayed production of the Videos.

## DISCUSSION

### 1. The Work Product Privilege Claim

 "The attorney work product privilege generally protects documents prepared by an attorney in anticipation of litigation." *Miccosukee Tribe of Indians of Fla. v. U.S.*, 516 F.3d 1235, 1263 (11th Cir.2008) (citing *Hickman v. Taylor*, 329 U.S. 495, 509–10, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). "[I]n order for the work product doctrine to apply, the party asserting the doctrine must demonstrate that at the time the materials were created or drafted, the entity must have anticipated litigation." *Schulte v. NCL (Bahamas) Ltd.*, No. 10–23265–CIV, 2011 WL 256542, at *2 (S.D.Fla. Jan. 25, 2011) (Simonton, Mag. J.) (citing *CSX Transp. Inc. v. Admiral Ins. Co.*, No. 93–132–CIV–J–10, 1995 WL 855421, at *2 (M.D.Fla. July 20, 1995)). "Thus, materials or documents drafted or created in the ordinary course of business are not protected." *Id.*

 Here, the Videos were obtained from surveillance cameras, hence created in the ordinary course of business. Yet NCL claims that the Videos are protected by the work product privilege because "an act giving rise to the accrual of a claim against the Defendant occurred, namely, the Plaintiff's fall on board the Norwegian Breakaway. As accidents onboard cruise ships routinely lead to litigation, after the accident the video was reviewed and preserved." See Defendant's Reply in Support of Motion for Protective Order (hereafter, "Reply") [D.E. 30 at 4]. This same contention was rejected in *Schulte*, where NCL claimed that a surveillance video of a slip and fall accident aboard NCL's *Norwegian Jewel* was protected by the work product privilege because "it was preserved based upon instructions by Counsel for NCL." *Schulte*, 2011 WL 256542, at *3. There, Magistrate Judge Simonton reasoned that

> once NCL was aware that a claim might be made based upon the Plaintiff's slip and fall incident, NCL had a duty to preserve that tape, and counsel had a duty to advise NCL to do so. In this regard, NCL's decision to preserve the video is best viewed in the context of those cases where courts have examined spoliation claims based upon an entity's failure to preserve evidence despite notice that [ ] a lawsuit might be forthcoming. It would be anomalous, to say the least, if by ordering a client to preserve evidence created in the ordinary course of business, in anticipation of litigation, counsel was able to shield that evidence from production based upon work product protection.

*Id.* (citations omitted).

In this case, as in *Schulte*, NCL relies on *Bolitho v. Home Depot USA, Inc.*, No. 10–60053–Civ, 2010 WL 2639639 (S.D.Fla. June 3, 2010) (Seltzer, Mag. J.) for the proposition that the Videos are entitled to work product protection. See Reply [D.E. 30 at 4], As noted in *Schulte*, however, the *Bolitho* decision relied on a case involving "a request for a surveillance video made after the incident, rather than a video of the actual accident made prior to the anticipation of litigation." *Schulte*, 2011 WL 256542, at *4. Thus, Magistrate Judge Simonton "decline[d] to follow *Bolitho* to the extent that it holds that a surveillance video made in the regular course of an entity's business, which captures an accident at the time it occurs, becomes work product when counsel orders its preservation." *Id.* The undersigned agrees with the analysis and conclusions in *Schulte* and finds

that the Videos are not protected by the work product privilege.[1]

## 2. The Request to Delay Production of the Video

■ As previously noted, notwithstanding its privilege claim, NCL is willing to produce the Videos after Holbourn's deposition. According to NCL, pre-deposition production of the Videos is prejudicial because it presents the risk that Holbourn will tailor her testimony to what is depicted in them. NCL relies for its request on Fed.R.Civ.P. 26(d), which provides, in pertinent part:

**(d) Timing and Sequence of Discovery.**

\* \* \*

**(2) Sequence.** Unless, on motion, the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice:

**(A)** methods of discovery may be used in any sequence; and

**(B)** discovery by one party does not require any other party to delay its discovery.

Fed.R.Civ.P. 26(d). NCL also relies on *Parks* for the proposition that Holbourn should be required "to give her deposition testimony based on her own independent recollection of the incident, without being refreshed in any way by the videotape." *See* Motion for Protective Order [D.E. 23 at 4] (quoting *Parks*, 285 F.R.D. at 675).

However, in addressing a similar request in *Schulte.* Magistrate Judge Simonton reasoned as follows:

The undersigned recognizes that even though the tapes at issue are not work product, the Court retains the discretion to control the timing of discovery. Thus, under appropriate circumstances, the Court would not require production of a videotape prior to a plaintiff's deposition. While not dispositive to the undersigned's ruling on this issue, in determining that it is appropriate for the Defendant to produce the video tape prior to the Plaintiff's deposition, the Court has considered the fact that, as confirmed by the Defendant at the hearing, the Plaintiff made statements concerning the accident, at the time it occurred, to ship personnel. In addition, Plaintiff described the location of her fall, albeit inaccurately, at the time she attended the inspection of the vessel. Defendant has failed to point to any aspect of the video, and/or any action by Plaintiff, that would cause this Court to find that disclosure of the video would lead Plaintiff to improperly tailor her testimony. As such, there appears to be little, if any, prejudice to the Defendant if the Plaintiff is permitted to view the video to refresh her recollection prior to her deposition.

*Schulte*, 2011 WL 256542, at * 4. Here, Holbourn provided a hand-written statement shortly after the incident and made specific allegations in her Complaint relating to the conditions on the deck at the time the sun lounger hit her. Because, as in *Schulte*, NCL's claim of prejudice appears to be speculative, NCL has not carried the burden to justify delayed production of the Videos.[2]

---

1. Significantly, in overruling Plaintiff's objections to the Magistrate Judge's ruling in *Bolitho*, District Judge James I. Cohn stated: "Plaintiff has a stronger argument that the video is not work product in the first place. There is no question that the surveillance video is routinely taken as an antitheft device. However, the Magistrate Judge accepted Defendant's argument that the preservation and copying of the video was made after Plaintiff reported the incident, and therefore at that point, Defendant reasonably anticipated litigation." *Bolitho v. Home Depot USA, Inc.*, No. 10–60053–Civ, 2010 WL 2639590, at *2 (S.D.Fla. June 29, 2010) (Cohn, J.).

It is also worth noting that in *Parks v. NCL (Bahamas) Ltd.*, 285 F.R.D. 674 (S.D.Fla.2012), Magistrate Judge Seltzer declined to decide NCL's claim that a surveillance video of a fall aboard NCL's *Norwegian Jewel* was protected by

the work product privilege based on NCL's preservation of the video after Plaintiff reported the incident. *Id.* at 675 ("The Court need not now decide the issue.").

2. *Compare Ordonez v. NCL (BAHAMAS) LTD.*, No. 13–24262 (S.D.Fla. Mar. 7, 2014) (Simonton, Mag. J.) [D.E. 28] (allowing NCL to withhold production of a surveillance video until after Plaintiff had been questioned about the accident based on a colloquy with counsel regarding the contents of the video and due to the unique circumstances of the case). Here, no unique circumstances have been disclosed. Moreover, although at the hearing NCL's counsel pointed out to a discrepancy between what appeared in the Videos and a representation by Plaintiff's counsel regarding whether Holbourn walked away from the deck where the incident occurred

There is a further reason for denying NCL's request to delay production of the Videos. In *Muzaffarr v. Ross Dress for Less*, 941 F.Supp.2d 1373 (S.D.Fla.2013) (Snow, Mag. J.) the court considered the parties' dispute regarding Defendant's request to delay production of a surveillance video recording of Plaintiff's fall at Ross' Lauderdale Lakes store until after Plaintiff's deposition. *Id.* at 1373–74. Defendant argued that it would be "severely prejudiced" if Plaintiff were "permitted to review the footage and then conform her testimony to the events as recorded;" and that this "would deprive the Defendants of the opportunity to evaluate the Plaintiff's credibility." *Id.* at 1374. Defendant relied on *Parks* and Plaintiff relied on *Schulte* in support of their respective positions. *Id.* at 1375. Instead of considering these cases, Magistrate Judge Snow elected to adopt the analysis in *Dehart v. Wal–Mart Stores, East, L.P.*, No. 4:05CV00061, 2006 WL 83405 (W.D.Va. Jan. 6, 2006). *Muzaffarr*, 941 F.Supp.2d at 1375. As noted by Magistrate Judge Snow:

> In *Dehart*, the Court distinguished between surveillance tapes used solely for impeachment purposes, and surveillance tapes having predominantly substantive value as evidence of the underlying facts surrounding the incident giving rise to the plaintiff's complaint. Where the substantive value of the evidence predominates, courts have held that production should not be delayed until after deposition.
>
> In this case, the videotape at issue depicts the incident giving rise to the Plaintiff's complaint. While it could be offered for impeachment value, the primary evidentiary value of such a tape is as proof of the underlying facts surrounding the incident. Therefore, the videotape should be produced to the Plaintiff prior to her deposition.

*Id.* (citations omitted).

As in *Muzaffarr*, the primary evidentiary value of the Videos is proof of the facts surrounding the incident underlying this litigation and their impeachment value is secondary. Therefore, the analysis in *Mu-*

*zaffarr* and *Dehart* also supports the undersigned's ruling that the Videos be produced prior to Holbourn's deposition.

## CONCLUSION

Based on the foregoing considerations and in accordance with the undersigned's rulings at the September 10, 2014 hearing, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion for Protective Order is DENIED. Defendant shall produce the Videos prior to Plaintiff's deposition.

---

or had to be transported out, the latter acknowledged that such representation was based on her

own inferences and not on information provided by her client.